**Ronald HOFFMAN, Appellant,**

v.

**Gene WILTSCHECK, et al., Courtland Truck Center, d.b.a. Courtland Trucking, et al., Randy Wiltscheck, Fred Gareis, Roland Tauer, et al., Danny's Bar, Schell's Brewery, Respondents.**

No. C1–85–1290.

Court of Appeals of Minnesota.

Dec. 17, 1985.

Ross Muir, Robert B. Spelhaug, Muir, Heuel & Carlson, P.A., Rochester, for Ronald Hoffman, appellant.

Richard T. Rodenberg, Berens, Rodenberg, O'Connor, Olson, Hinnenthal & Tuttle, New Ulm, for Gene Wiltscheck, et al.

William M. Schade, Somsen, Dempsey & Schade, New Ulm, for Courtland Truck Center, d.b.a. Courtland Trucking, et al.

Brian A. Wood, Joan S. Morrow, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Randy Wiltscheck.

Elton A. Kuderer, Gregory E. Kuderer, Erickson, Zierke, Kuderer, Myster, Madsen & Wollschlager, P.A., Fairmont, for Fred Gareis.

C. Allen Dosland, William A. Moeller, Gislason, Dosland, Hunter & Malecki, New Ulm, for Roland Tauer, et al.

Peter E. Lind, Jeffrey M. Bauer, Foster, Waldeck & Lind, Ltd., Minneapolis, for Danny's Bar.

Norman W. Larsen, Larsen, Heck & Klimek, Minneapolis, for Schell's Brewery.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from summary judgment entered for the respondents in an action for personal injury. The trial court determined that there was no reason for delay and directed entry of judgment. Minn.R.Civ.P. 54.02. We affirm.

## FACTS

Appellant Ronald Hoffman suffered serious injuries, resulting in quadraplegia, when struck by a pickup truck on August 7, 1983, at approximately 4:00 a.m., while walking on Brown County Road 25. The pickup truck was driven by respondent Gene Wiltscheck. There is a factual dispute as to whether Hoffman, who admits he was intoxicated, was walking on the shoulder or on the right-of-way. Hoffman's claim against Wiltscheck for negligence in operation of the truck, however, remains before the trial court and is not involved in this appeal.

The night he was injured, Hoffman was participating in a hayride which had stopped at the farm of Randy Wiltscheck, Gene's brother. A sizable crowd had gathered at the Wiltscheck farm, where a large party was scheduled for the following day.

Hoffman brought claims against the following persons or entities:

1) Oscar Reinhardt, Dave Machou, and Courtland Truck Center, as owners of the pickup truck;

2) Robert Tauer, as owner of the tractor used in the hayride;

3) Roland Tauer and Fred Gareis, as, respectively, alleged supervisor and driver on the hayride;

4) Randy Wiltscheck, as owner of the farm and co-organizer of the "Gene Wiltscheck Annual Birthday Party" which was to be held the following day;

5) Gene Wiltscheck, as co-organizer of the party; and

6) Danny's Bar and Schell's Brewery, as sellers of liquor to Roland Tauer.

The trial court granted summary judgment for all defendants except Gene Wiltscheck as driver of the truck, and the alleged owners of the truck.

Appellant Hoffman, respondent Roland Tauer, and a third person met at Danny's Bar on August 5, 1983, to discuss plans for

a hayride the following evening. The riders would travel in a haywagon owned by Tauer's father. They would leave from the Tauer farm, drive through New Ulm recruiting more riders and then drive through the countryside. There was no set route for the ride before the eventual return to the Tauer farm.

On the evening of August 6, Hoffman drove to the Tauer farm, where he left his pickup truck, and the hayride set out. In New Ulm, they first picked up respondent Fred Gareis, who was to drive because he did not drink. They then went to a number of bars, including Danny's, to recruit more riders. They also obtained ice for the keg beer to be picked up at the Schell's Brewery warehouse in New Ulm. Roland Tauer had obtained an "open ticket" for keg beer at Danny's Bar that afternoon.

The "open ticket" allowed a customer to obtain beer from the brewery warehouse and pay for the beer later at the local bar. The warehouseman at Schell's provided Tauer the group's second keg of beer sometime after 1:00 a.m., contrary to state law and company policy.

The hayriders, including Hoffman, had also been drinking at the bars while recruiting. They left Danny's Bar after its 1 a.m. closing, and, after picking up the second keg and recruiting at two local restaurants, the hayride left town for the Randy Wiltscheck farm, where a preparatory party was underway.

The "Gene Wiltscheck Annual Birthday Party" had been held for eleven years. It was well-publicized in the area and well-organized, with food and T-shirts provided. Beer was dispensed from a refrigerated truck. The admissions price was $6 per person. The Wiltschecks did not obtain a permit or license for the party.

When the hayride reached the Wiltscheck farm, Hoffman and others got off and mingled with the approximately 50 to 100 people already there. The beer-dispensing truck had been set up. Members of a Chicago motorcycle gang had set up tents on the farm, and it was apparently due to the fears of some of the hayriders concern-

ing this group that a decision was made to leave the farm. Events following this decision are largely in dispute, including the key issue of whether Hoffman was informed of the impending departure and given a chance to rejoin the group.

Sometime after the hayride left, Hoffman also departed, walking on County Road 25. Hoffman claims to have been walking on the shoulder of the road. A motorcyclist stated that he almost struck Hoffman, and that Hoffman was walking on the paved portion of the road. Wiltscheck claims that Hoffman was walking on the paved roadway two feet from the fog line marking the shoulder.

## ISSUES

1. Did the driver of the hayrack and the alleged supervisor of the hayride owe a duty of care to Hoffman at the Wiltscheck farm?

2. Was the farmowner liable, as a landowner, for Hoffman's injury?

3. Were the organizers of the party on the farm liable under the Civil Damage Act or under the common law for injury allegedly caused by the liquor they provided?

## ANALYSIS

### I.

■ The trial court concluded that Roland Tauer and Fred Gareis had no duty to Hoffman to exercise due care for his protection. The court compared the facts of this case with those cases finding such a duty on the part of one who has charge of a person unable, for whatever reason, to take care for his own safety. In *Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn. 1979), the court held that a jury question was presented as to whether the husband could be liable for leaving his intoxicated wife on a highway at night. In *Depue v. Flatau*, 100 Minn. 299, 305, 111 N.W. 1, 3 (1907) it was held that a farmer could be found liable for sending a cattle buyer, whom he had invited to his farm and who was suddenly taken ill, out into severe win-

ter weather. The trial court here distinguished both cases based on the special relationship between the parties—husband-and-wife in *Regan,* and business invitee in *Depue.* The court also found no reasonably foreseeable risk of injury, as existed in *Regan* and *Depue.*

The court in *Regan* stated the following standard for a legal duty:

A determination that defendant was bound by a common-law duty of this nature requires findings that decedent was under a disability and that defendant was "in charge" of her.

285 N.W.2d at 100. Similarly, the court in *Depue* based its decision on a broad definition of duty towards a disabled person in the "charge" of another. 100 Minn. at 303, 111 N.W. at 2.

*Regan* indicates that intoxication is an incapacity or disability. 285 N.W.2d at 100. There is a factual issue as to Hoffman's intoxication. The trial court's memorandum, however, concluded that neither Gareis nor Tauer were "in charge" of Hoffman.

We would have no difficulty in finding a duty of care towards a hayride passenger along the hayride route. *See e.g. Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818 (1975) (driver of snowmobile on church-sponsored snowmobile party found not negligent). The parties recognized such a duty by choosing Gareis, a teetotaler, as driver. Once the hayride reached the Wiltscheck farm and stopped at the party, however, where Hoffman knew several individuals, including the Wiltschecks, there was no longer a legal duty towards him.

The existence of a legal duty is generally an issue for the court to determine as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985); *Prosser and Keeton on Torts* § 37 (5th ed. 1984). We agree with the trial court's conclusion that as a matter of law there was no legal duty to Hoffman at the Wiltscheck farm.

As a starting point, the supreme court has reaffirmed the following principle:

The fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

*Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979).

It is undisputed that the hayride was unorganized, that it had no set schedule or route, and that the participants generally directed the driver where to go. Hoffman admits that the hayride was different from an organized hayride he had been on before. There was no arrangement for announcing the departure of the wagon from each of its stops. It is not clear who suggested the stop at the Wiltscheck farm. It is undisputed, however, that Hoffman knew several people at the party, including the Wiltschecks. Furthermore, although some persons on the haywagon were afraid of the "bikers" present, Hoffman was not one of them.

Since Hoffman was in a place of safety at the Wiltscheck farm, there was no continuing duty of care towards him. *Cf. Rieger v. Zackoski,* 321 N.W.2d 16, 22 (Minn.1982) (action of racetrack spectator in moving from infield to track was not a superseding cause); *Mikes v. Baumgartner,* 277 Minn. 423, 430, 152 N.W.2d 732, 737 (1967) (school bus driver had a continuing duty, based on statute, to see that child passenger not only disembarked safely but safely crossed the highway). A casually organized hayride involving adults is not an activity suggesting a continuing duty such as was found in *Rieger,* involving a hazardous activity, or in *Mikes,* which concerned a statutory duty imposed because of the unpredictability of children.

The theory of liability asserted against Robert Tauer, father of Roland and owner of the tractor and wagon used on the hayride, appears to be closest to a negligent entrustment theory. *See* Restatement (Second) of Torts § 308 (1965). Hoffman's injuries, however, were not caused by any misuse of the farm implements, which were properly entrusted to a sober, adult driver. We believe that any duty owed by Robert

Tauer must derive from a continuing duty owed to Hoffman at the Wiltscheck farm.

The liability of the dram shop defendants, Schell's Brewery and Danny's Bar, also depends on that of Roland Tauer, to whom they allegedly sold beer. The trial court granted summary judgment for the dram shop defendants because it found that Tauer was not liable for Hoffman's injuries.

In order to establish liability under the dram shop law, a claimant must show that the illegal sale contributed substantially to the intoxication and that the intoxication contributed to cause the injury. *Hollerich v. City of Good Thunder*, 340 N.W.2d 665, 668 (Minn.1983). Since we affirm the trial court's ruling that Tauer had no legal duty whose breach could cause Hoffman's injury, we need not address the other issues raised concerning the dram shop claims.

## II.

■ Hoffman contends that Randy Wiltscheck is liable for his injuries due to his status as owner of the land on which the birthday "pre-party" was held.

Hoffman relies on *Connolly v. The Nicollet Hotel*, 254 Minn. 373, 95 N.W.2d 657 (1959), in which the plaintiff, standing on a sidewalk outside the hotel, was injured by an object thrown from an upper floor of the hotel. In *Connolly*, however, while the harm occurred off the landowner's premises, the cause of the harm was an activity occurring on the land. Here, not only was Hoffman off the Wiltscheck farm when the accident occurred, but Gene Wiltscheck, the alleged tortfeasor, was off the premises. Although a landowner may have a duty to control the conduct of an invitee on his land, *see Olson v. Ische*, 343 N.W.2d 284, 288 (Minn.1984), we find no authority for the proposition that a landowner has a duty owed to third persons to control an invitee to the extent of preventing him from leaving the land. *See e.g., Cole v. City of Spring Lake*, 314 N.W.2d 836, 840 (Minn.1982) (no common law liability for furnishing liquor to brother-in-law or for requiring him to leave the house); *cf. Depue v. Flatau*, (duty existing towards the invitee requesting to stay on the land overnight).

■ Hoffman also claims that the Wiltschecks are liable under the dram shop law as *de facto* commercial vendors of liquor due to the nature of the birthday party they organized. The supreme court in *Cady v. Coleman*, 315 N.W.2d 593, 596 (Minn.1982), however, indicated that liability under the dram shop law is limited to

a person in the business of providing liquor, and not a social host who happens to receive some consideration from his guests in return for drinks he provides.

Another problem with this theory of liability is that the accident occurred the night before the birthday party, and the record does not show that admission was charged or a price charged for beer on the night Hoffman was injured.

The final theory of liability asserted against the Wiltschecks is that of a common law liability for social hosts who serve liquor to their guests. Such a theory of liability was rejected by the supreme court in *Holmquist v. Miller*, 367 N.W.2d 468, 472 (Minn.1985), holding that the dram shop law preempts any common law liability for social hosts negligently serving alcohol.

## DECISION

The trial court did not err in ruling that the Tauers and Fred Gareis had no duty of care towards appellant at the Wiltscheck farm. Thus, summary judgment for the dram shop defendants, Danny's Bar and Schell's Brewery, for the selling of liquor to Roland Tauer, was also not error. Summary judgment was properly granted for Randy Wiltscheck on all theories of liability, and for Gene Wiltscheck on all theories except the alleged negligence in operation of a motor vehicle.

Affirmed.