**Lynn Anne KWAPIEN, Respondent,**

v.

**Debra Mae STARR, Appellant.**

**No. C6–86–839.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

James E. Malters, Von Holtum, Hand, Malters & Shepherd, Worthington, for respondent.

Kenneth R. White, Scott V. Kelly, Farrish, Johnson & Maschka, Mankato, for appellant.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This matter comes before the court from a judgment entered following a jury trial,

and from denial of post-trial motions. The claim arises from a one vehicle car accident in which respondent sustained personal injury.

Prior to trial, appellant admitted liability for the accident, leaving only the questions of causation and damages for the jury. The jury returned a verdict of $45,000 for respondent. Appellant then moved for judgment notwithstanding the verdict or a new trial, or remittitur based upon several assigned errors. The trial court denied appellant's motions in all respects in an order dated April 18, 1986. This appeal followed.

## FACTS

On November 21, 1983, respondent Lynn Kwapien was a passenger in a car driven by appellant Debra Starr when it left a Murray County road and went into a ditch. As a result of the accident, respondent received stitches on her chin, experienced difficulty breathing, and complained of a stiff neck. Respondent saw a doctor on several occasions after the accident, complaining of continuing pain in her neck and back.

Six weeks after the accident, respondent was walking down the street when she experienced a sharp pain and felt a snap in her back. After being brought to the hospital emergency room, respondent was diagnosed as having a fractured right clavicle, and was hospitalized for 8 days. Following her release, respondent continued to complain of soreness and stiffness. On May 23, she saw an orthopedic surgeon, Dr. Harry Miller. Dr. Miller examined respondent and found a fractured clavicle, flexion, extension, and rotation restrictions in her neck, a bony mass of the right clavicle in the area of the fracture, and some muscle spasm in the neck. Dr. Miller did not prescribe a course of treatment or medication, and did not see respondent after the May examination. Dr. Miller assigned a 10% permanent disability to respondent's neck due to cervical sprain, and a 5% permanent disability to her upper extremity due to continuing complaints of pain in the mamibrium joint.

In connection with this litigation, respondent also saw Dr. Paul Yellin on November 18, 1985. Dr. Yellin found no evidence of muscle spasm or any other objective finding of a continuing cervical injury. He found continuing injury based only on respondent's subjective complaints. Dr. Yellin assigned no permanent functional disability to respondent.

Respondent moved to Arizona in 1985, and sought additional medical attention there from Dr. Cheshire. Dr. Cheshire prescribed a course of physical therapy that respondent was financially unable to undertake.

Before the trial of the case to the jury, respondent brought a motion in limine to prevent appellant from introducing evidence that respondent's former boyfriend severely beat or otherwise injured respondent on unspecified dates both before and after the November 21, 1983 car accident. Appellant, by way of an offer of proof and argument, sought to introduce the fact that Robert Rachuy repeatedly struck respondent several times about the face and head causing minor bruising. After finding that no medical treatment was sought by respondent following these beating incidents, and that appellant failed to present any specific facts to suggest that the injuries suffered by respondent as a result of these beatings were in any respect permanent, the trial court ruled that there was no basis for believing that the alleged injuries Lynn Kwapien suffered at the hands of Robert Rachuy had any bearing on her present claim. The trial court excluded the evidence based on its prejudicial nature and the speculative nature of the premise, i.e., that respondent was injured at times other than in this accident. The court specifically allowed questioning concerning any injuries sustained by respondent between the time of the accident and the date she first sought medical attention for the neck and clavicle injuries. The court, however, excluded any questioning of respondent's medical witnesses regarding the possible

effect which the injuries inflicted by Rachuy might have had on respondent.

At the time of trial appellant admitted liability and the parties tried only the issue of respondent's damages. Appellant attempted to introduce evidence regarding the effect of the beatings through cross-examination of the orthopedic surgeon who examined respondent. Appellant asked, for example, if a "blow to the head" would be "significant" in terms of diagnosing the cause of respondent's injuries. Appellant could not be more specific regarding the "blows" or the possible consequences to respondent. In light of the absence of specific facts regarding the nature and extent of both the assaults and the results therefrom, the trial court ruled that the entire matter was irrelevant, speculative and prejudicial.

The jury returned a verdict in favor of respondent in the sum of $45,000.00, finding damages for pain, suffering and disfigurement in the amount of $2,000; the fair and reasonable value of medical supplies and services for respondent's treatment in the amount of $2,000; the fair and reasonable value of future medical supplies and services in the amount of $20,000; future pain, suffering and disfigurement in the amount of $6,000; and future loss of earning capacity in the amount of $15,000. The trial court adopted the jury determination and, after reducing the award for no-fault benefits paid, ordered judgment entered in favor of respondent.

Appellant moved the trial court for relief under Rule 50.02, judgment notwithstanding the verdict, or in the alternative, for a new trial pursuant to Rule 59.01, and further, for relief in the form of remittitur. The trial court denied all requests for relief. Appeal is taken from the trial court's denial of appellant's post-trial motions.

## ISSUES

1. Did the trial court err in excluding testimony relating to alleged beatings of respondent by her boyfriend before and after the car accident, and medical testimony concerning the possible significance of the alleged beatings?

2. Did the trial court err in submitting the question of future loss of earning capacity to the jury?

3. Did the trial court err in refusing to grant remittitur as to the claim of future medical expenses?

## ANALYSIS

### I.

In reviewing the reception of testimony at trial, the trial court's ruling will not be reversed absent a clear abuse of discretion. *Kellet v. Wasnie,* 261 Minn. 440, 445, 112 N.W.2d 820, 824 (1962). Here, there was deposition testimony from the doctors that evidence of beatings would be significant on the issue of causation. The trial court, however, excluded evidence of domestic abuse incidents involving respondent and her boyfriend and medical testimony concerning the possible significance of such alleged assaults.

While it is true that respondent was not diagnosed as having a clavicle injury until 6 weeks after the accident, there was no evidence in any testimony or deposition that respondent received an injury to the cervical spine or clavicle as a result of any domestic abuse incidents either before or after the accident. There was no evidence that respondent ever sought medical treatment as a result of any beatings, and there was no evidence of permanent injury from any beatings. The evidence appellant presented to the trial court showed only that respondent had been slapped or punched in the face, causing slight bruising on the temple and forehead, and that she had also sustained bruises on her legs and buttocks. There was no evidence proffered by appellant that the physical abuse sustained by respondent was severe enough to cause the serious spine and clavicle injuries sustained by respondent. Presented with the fact that there was no evidence that beatings caused or aggravated the spine and clavicle injuries, no proof of the nature or extent of the injuries caused by the

beatings, and the inflammatory nature of the evidence, the trial court could reasonably have determined that the evidence was speculative, prejudicial, irrelevant, and lacking foundation.

■ The trial court also excluded medical testimony regarding the possible significance of beatings to respondent's spine and clavicle injuries on similar grounds, finding it speculative and lacking foundation. Generally, a defendant should be entitled to have admitted into evidence expert testimony bearing directly on a crucial issue. *Riewe v. Arnesen,* 381 N.W.2d 448, 458 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. March 27, 1986). However, experts must base their opinions on facts sufficient to form an adequate foundation for the opinion and should not be allowed to speculate. *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 154–55 (Minn.1982). A trial court's determination on the sufficiency of the foundation laid for an expert opinion will not be reversed absent a clear abuse of discretion. *Wenner v. Gulf Oil Corp.,* 264 N.W.2d 374, 382 (Minn.1978). In this case, the trial court could reasonably have determined that testimony regarding possible significance of beatings was speculative and lacking foundation when no evidence as to the nature and/or effects of the alleged beatings was proffered.

## II.

■ Generally, the amount of an award of general damages is left to the discretion of the jury and the trial court. *Busch v. Busch Construction, Inc.,* 262 N.W.2d 377, 398 (Minn.1977). The impairment of earning capacity is an item of general damages which does not require specific proof of actual earnings or income either before or after the injury. *Wilson v. Sorge,* 256 Minn. 125, 130–32, 97 N.W.2d 477, 482–83 (1959). Because future damages such as this are impossible to prove with absolute certainty, the rule is that recovery may be had if future damage is reasonably certain to occur. *Carpenter v. Nelson,* 257 Minn. 424, 427, 101 N.W.2d 918, 921 (1960). Before an instruction on the loss of future earning capacity is given, the plaintiff must prove the reasonable certainty of future damages by a fair preponderance of the evidence. *Pietrzak v. Eggen,* 295 N.W.2d 504, 507 (Minn.1980).

Appellant contends the trial court erred in allowing the jury to consider the loss of future earning capacity because the evidence presented at trial was insufficient to justify any award for loss of future earnings. Appellant points out that respondent never testified as to former lines of employment or future areas of desired employment from which she was now precluded from entering, she admitted that no physicians have restricted her activities, and the symptoms she describes are essentially subjective.

■ Appellant is correct that the proponent of the instruction must prove by a preponderance of the evidence that future losses are reasonably certain to occur as a result of the injury, *Carpenter,* 257 Minn. at 428, 101 N.W.2d at 921, and that it is error for the jury to speculate what the loss would be. *Sturlaugson v. Renville Farmers Lumber Co.,* 295 Minn. 334, 337, 204 N.W.2d 430, 432 (1973). However, appellant misconstrues the proof required by respondent to meet this burden. Respondent had to prove, by a preponderance of the evidence, that a loss of earning capacity—an impairment in her *power* to earn a living—was reasonably certain to occur as a result of the injuries she sustained. *LeMay v. Minneapolis Street Railway Co.,* 245 Minn. 192, 200, 71 N.W.2d 826, 831 (1955). Evidence of past earnings or the expression of future desired areas of employment was not necessary.

The Minnesota Supreme Court has held that recovery for future loss of earning capacity was appropriate for a plaintiff who was presently performing homemaker activities and had no plans to resume gainful employment. In that case, the court said:

　　* * * the impairment of the ability of a woman to work is an injury to her personal rights wholly apart from any pecu-

niary benefit the exercise of such power may bring, and if her injury has lessened this power she ought to be able to recover damages * * *.

LeMay, 245 Minn. at 200, 71 N.W.2d at 831 citing Marshall v. Smith, 131 Cal.App. 258, 261, 21 P.2d 117, 118 (1933).

An award for impairment of earning capacity should be based on an evaluation of such factors as age, life expectancy, health, occupation, talents, skill, experience and training. Young v. Hansen, 296 Minn. 430, 434, 209 N.W.2d 392, 395 (1973) citing Wilson, 256 Minn. at 132, 97 N.W.2d at 483. From the evidence presented at trial the jury could reasonably have determined that the physical injuries and minimal permanent disability respondent sustained, in light of her lack of education or training, were reasonably certain to effect her capacity or power to earn a living in the future.

### III.

Remittitur may be granted on the ground that an excessive verdict appears to have been given under the influence of passion and prejudice or on the ground that the damages are not justified by the evidence. Busch, 262 N.W.2d at 400–401. Granting remittitur is within the trial court's discretion and the appellate court will not interfere unless there has been a clear abuse of discretion. Id. Appellant contends that the trial court erred in refusing to grant remittitur on the claim of future medical expenses because of the total lack of evidence establishing the basis for a calculation of this item of damage.

The burden of proof on the issue of future medical expenses is similar to that on the issue of loss of earning capacity. Before an instruction on future medical expenses is allowed, the plaintiff must prove the reasonable certainty of such expenses by a fair preponderance of the evidence. Pietrzak, 295 N.W.2d at 507. In Lamont v. Independent School District No. 395, 278 Minn. 291, 154 N.W.2d 188 (1967), however, the court stated:

[a]lthough we have permitted an award for loss of future earning capacity in situations where the jury is competent to assess the likelihood of plaintiff's diminished productivity, we have not allowed future medical expenses without an estimate of what they might be. This is a matter which the jury cannot compute blindly without expert testimony. It cannot be left to their speculation.

Id. at 295, 154 N.W.2d at 192 (footnote omitted).

The jury, then, is not permitted to award any amount based on a showing that "expenses" are likely to occur. The plaintiff must also present some evidence of what the expenses will be. Id.; Sturlaugson, 295 Minn. at 337, 204 N.W.2d at 432.

In this case, Dr. Miller testified that because respondent's condition was permanent and essentially "incurable," respondent was required to undergo physical therapy or similar treatment to relieve her pain for the rest of her life. There was also evidence that respondent had sought physical therapy previously, and the costs of those treatments was admitted by way of stipulation. In addition, the jury was presented with an actuarial table life expectancy figure for respondent of 58.1 years.

From this evidence, the jury could have found that it was reasonably certain that respondent would incur future medical expenses. While there was no testimony directly estimating respondent's future medical expenses, it was possible for the jury to take respondent's life expectancy and factor it against the cost of her past physical therapy treatments to arrive at an approximate figure for future medical expenses. A figure arrived at in this manner based upon the evidence presented would not have been pure speculation. Because there was a reasonable basis for the jury's conclusion that respondent's future medical expenses would be $20,000, the trial court's refusal to grant remittitur was not an abuse of discretion.

## DECISION

The trial court did not err in excluding evidence of alleged domestic assaults since that evidence was speculative, prejudicial, irrelevant, and lacking foundation.

There was sufficient evidence to allow the question of future loss of earning capacity to go to the jury.

It was not an abuse of discretion for the trial court to refuse to grant remittitur on the award of future medical expenses since that award was reasonably based on evidence presented to the jury.

Affirmed.