Kelly A. LIND, n/k/a Kelly A. Bunnell, Respondent,

v.

Michael G. SLOWINSKI, et al., Respondents (CX–89–1037), Appellants (C1–89–1041),

v.

Larry BUNNELL, third-party defendant, Appellant (CX–89–1037), Respondent (C1–89–1041).

Nos. CX–89–1037, C1–89–1041.

Court of Appeals of Minnesota.

Jan. 16, 1990.

Review Denied Feb. 21, 1990.

Russell L. Streefland, Streefland & Groves, Burnsville, for Kelly A. Lind, n/k/a Kelly A. Bunnell.

Willard L. Converse, Peterson, Bell, Converse, & Jensen, St. Paul, for Michael G. Slowinski, et al.

Thomas A. Harder, James J. Galman, Jardine, Logan & O'Brien, St. Paul, for Larry Bunnell.

Heard, considered and decided by FORSBERG, P.J., and NORTON and

BOWEN *, JJ.

## OPINION

FORSBERG, Judge.

Respondent Kelly A. Lind, n/k/a Kelly A. Bunnell, was injured when an auto she was a passenger in left the road. She sued the driver, appellant Michael Slowinski, and the owner of the car, appellant Paul Slowinski. Slowinskis in turn filed a third-party complaint against appellant Larry Bunnell, another passenger in the car at the time of the accident. The jury found Lind 5% negligent, Slowinski 55% negligent, and Bunnell 40% negligent. Damages of $323,074 were awarded and included $63,000 for future medical expenses. Bunnell and Slowinskis appeal from judgment and denial of post-trial motions. We affirm in part and reverse in part.

## FACTS

On October 24, 1984, Michael Slowinski and Bunnell had just completed the first phase of their architectural drawing curriculum at a state vo-tech school. After the two drank a 12–pack of beer, Bunnell purchased another and put it in Slowinski's car. He then called Lind, his girlfriend at the time, to arrange for her to accompany him and Slowinski on a drive to Hastings, Minnesota. Bunnell and Lind have since been married.

Bunnell testified he was intoxicated when he picked up Lind between 6:30 and 7:00 p.m. Lind smelled alcohol on Bunnell and Slowinski. Before entering the car, she noticed empty beer cans as well as the full 12–pack.

The back seat of Slowinski's 1978 Buick Skylark was down when Lind attempted to get in the car. She requested the back seat be put up, but both Slowinski and Bunnell urged her to ride in the front seat on Bunnell's lap. The testimony is unclear as to exactly what convinced her to do so, but she did get in the car partially on Bunnell's lap and partially on the front seat.

During the ride to Hastings, all three consumed beer. Both Bunnell and Lind

noticed Slowinski's driving became erratic. There is testimony both passengers urged Slowinski to be more careful and perhaps to cease driving. He did not heed this advice.

Upon arriving in Hastings, Slowinski's ability to drive had seriously deteriorated. He swerved out of control at one point, smashing into the front fender of a parked car. Slowinski drove away from the scene and turned down a dirt road at a speed of between 35 and 40 miles per hour. He was unable to negotiate a turn and as a result his vehicle left the road, rolled over, and landed on its hood.

While Slowinski and Bunnell suffered only minor injuries, Lind sustained a severe cervical spine injury. She has undergone surgery and, while generally able to walk and function on a day-to-day basis, has a 25 percent permanent partial disability. She suffers from brown-sequard syndrome, manifested by muscular deficit on one side of her body with a corresponding loss of feeling on the other side.

In June 1986, Lind sued Michael Slowinski, the driver, and Paul Slowinski, the owner of the vehicle in which she was injured. Slowinskis served a third-party complaint upon Bunnell, which alleged Bunnell was negligent in directing Lind to sit on his lap and preventing her from being in the rear seat where seat belts were available. Bunnell moved for summary judgment, claiming he owed Lind no legal duty. Bunnell's motion was denied and the case proceeded to trial.

Dr. Harry Fielden was Slowinskis' medical expert. Dr. Fielden testified in deposition, and over objection, the seating position of Lind in Bunnell's lap caused or increased the severity of her injuries. The court excluded this testimony based on lack of foundation and on Minn.Stat. § 169.685, subd. 4 (1988).

At the close of Lind's case, Bunnell moved for a directed verdict. He argued since the record was devoid of any evidence showing how the seating position contribut-

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

ed to the injury, there was no evidence reasonably tending to support the allegations in Lind's complaint. The trial court denied this motion. The issue of Bunnell's negligence went to the jury.

Slowinskis moved, at the close of evidence, that the court find as a matter of law Lind had not met her burden in proving the certainty of amount of future medical expenses. The court denied the motion and allowed this question to go to the jury.

After the jury instructions were given, Lind moved to amend her third-party complaint "by way of alleging that Larry Bunnell was negligent in his affirmative conduct from the time of entering the car up to the rollover accident, which negligence was a concurring cause to the accident and the resulting injuries to the plaintiff." The motion was granted over objection.

The jury apportioned liability 55% to Slowinski; 5% to Lind; 40% to Bunnell. The total jury verdict was for $323,074.52. After no-fault and comparative liability set-offs, Lind's award was $264,528.12. Included in this award was $63,000 for future medical expenses.

Post-trial motions were made by both Slowinskis and Bunnell. These motions basically restated the motions and objections made at trial. All of these motions were denied and judgment was entered.

Slowinskis and Bunnell have appealed from the judgment and from the order denying their post-trial motions. The two appeals have been consolidated by this court.

## ISSUES

1. Did the trial court err in allowing the issue of Bunnell's negligence and liability to go to the jury?

2. Was there sufficient evidence to support the jury award of $63,000 for future medical expenses?

3. Did the trial court erroneously keep from jury consideration expert testimony regarding the effect of Lind's seating position at the time of the accident?

## ANALYSIS

■ 1. Bunnell claims the trial court erred in allowing his negligence to go to the jury since he owed no legal duty to Lind. The existence of a legal duty is a question of law to be determined by the court. *Hoffman v. Wiltscheck*, 379 N.W.2d 145, 148 (Minn.Ct.App.1985). On review, conclusions of law by the trial court are not binding on this court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

We believe *Olson v. Ische*, 343 N.W.2d 284 (Minn.1984) is the controlling authority in this case. In *Olson*, driver-owner Ische was intoxicated while driving home a passenger, Fritz. Both Ische and Fritz had been drinking at a party earlier. Each man took a plastic cup of beer with him on the ride. Ische drove at an excessive speed, noticeably weaving, until he collided head-on with an auto operated by plaintiff Olson. Olson sued both Ische and Fritz. Several theories were advanced to support Fritz's liability.

The *Olson* court first dismissed any cause of action against Fritz based upon the Restatement (Second) of Torts § 298 (1965), which imposes a duty of reasonable care on a passenger not to subject other persons to unreasonable risks of harm. In so doing, the court reasoned:

A passenger has, of course, a legal duty to use care for his own safety, and his contributory negligence will bar or diminish his own claim. He may also have a moral duty owed to others not to encourage the driver to drive when he should not be driving. But to impose a legal duty on the passenger, which makes him liable to others on the highway for what the driver himself chooses to do, seems to us, as a general proposition, inappropriate. * * * For Fritz to join Ische in the car ride as he did here may be encouragement of a sort, but not the kind that creates legal liability.

*Olson*, 343 N.W.2d at 287.

The *Olson* court further held, as a general rule, there must be either active interference with the driver or some special rela-

tionship to the injured party to create liability.

A passenger who interferes with his driver's operation of the motor vehicle, for instance by grabbing the steering wheel, may be liable to others, and a passenger who is the owner of the car may be liable, at common law, for negligent entrustment to an incompetent driver. This case, however, is different. *We hold that a passenger has no duty to members of the public to control the operation of a motor vehicle by its intoxicated owner,* where, as under the circumstances here, there is no special relationship between the driver-owner and the passenger. Perhaps there may be instances where such a duty would arise, but this case is not one of them.

*Id.* at 288 (emphasis added).

■ No evidence was introduced here to show Bunnell in any way physically interfered with Slowinski's operation of the vehicle. Nor can such interference be inferred from Bunnell's furnishing alcohol to the operator of the vehicle. Any such liability would be subsumed by the civil damage act, which provides exclusive remedy for injuries resulting from illegal sale or furnishing of intoxicating liquors. "The supreme court has made it clear that the Act preempts *any* common law negligence action against a social host which is even remotely related to the negligent furnishing of alcohol." *Stevens v. Thielen,* 394 N.W.2d 834, 837 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 23, 1986) (emphasis in original) (citing *Holmquist v. Miller,* 367 N.W.2d 468, 471–72 (Minn.1985)).

In addition, there was no special relationship between Lind and Bunnell sufficient to impose a duty. Such relationships might include "parent-child, master-servant, land possessor, and custodian of a person with dangerous propensities." *Olson,* 343 N.W.2d at 288. Under certain circumstances, such a duty may also exist between husband and wife. *See Regan v. Stromberg,* 285 N.W.2d 97, 99–100 (Minn.1979). Although Lind and Bunnell are now married, this was not the case at the time of the accident. The dependency relationship

of the type required to impose a passenger duty to third parties was therefore absent in this case.

■ Slowinskis contend Bunnell's activities constitute "joint concerted tortious activity." This theory, as stated in Restatement (Second) of Torts § 876 (1979), was also discussed in *Olson.* Section 876 states in relevant part:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistant or encouragement to the other so to conduct himself[.]

*Id.* For this theory to be applicable, the participants must therefore know of the plan and its purpose and take affirmative steps to encourage the achievement of the tortious result.

In *Olson,* as here, there was no agreement or substantial encouragement in the passengers' actions, and the driver's drinking was entirely voluntary. *Id.,* 343 N.W.2d at 289. Further, in this case, Lind's decision to ride in the car was made with knowledge of the drinking activity and without coercion by either driver or passenger.

As none of the exceptions to the general rule against passenger liability outlined in *Olson* apply, we conclude Bunnell owed *no* duty to Lind as a matter of law. The trial court therefore erred in submitting his liability to the jury. Since we reach this result, it is unnecessary to determine Bunnell's additional assignments of error.

■ 2. Slowinskis contend the jury's award of $63,000 in future medical expenses is not warranted by the evidence at trial. They argue the testimony is speculative and will not allow the award of any future medical expenses. Alternatively, they suggest under the most liberal reading possible of the evidence, an appropriate jury award would be $17,374.13.

There are two requirements in the award of future medical expenses. The first is whether future damages in the form of future medical treatments will be required. *Pietrzak v. Eggen*, 295 N.W.2d 504, 507 (Minn.1980). The second requirement is that not only the necessity, but the amount of the damages be established by expert testimony. In particular,

> the plaintiff must prove the reasonable certainty of such expenses by a fair preponderance of the evidence. * * *

> The jury, then, is not permitted to award any amount based on a showing that "expenses" are likely to occur. The plaintiff must also present some evidence of what the expenses will be.

*Kwapien v. Starr*, 400 N.W.2d 179, 184 (Minn.Ct.App.1987).

*Kwapien* affirmed the trial court's refusal to grant remittitur on an award of future medical expenses. To reach the award it did, the jury in *Kwapien* made certain inferences based upon expert testimony. The jury had information on the cost of physical therapy, that future physical therapy would be necessary, and the life expectancy of the plaintiff. This made it "possible for the jury to take respondent's life expectancy and factor it against the cost of her past physical therapy treatments to arrive at an approximate figure for future medical expenses." *Id.*

Slowinskis note Dr. Fielden gave no estimate of future medical expenses. However, Dr. Fielden did state, "I think she will probably seek medical attention once in a while maybe over the years on the average of once every four or five years." Slowinskis also cite the testimony of Dr. John Bower, who stated: "With reasonable medical certainty I think she will need ongoing medical care on a sporadic basis." Slowinskis argue although there is some evidence Lind will need future medical care, it is not established to a reasonable probability what kind of care she will need.

The jury was provided with actuarial tables estimating Lind's life expectancy at 54 years. Dr. Fielden's testimony was that Lind takes, with varying frequency, Antiprox, Naprisin, Puronol, and Flexerol, and Advil. The jury also received as an exhibit Lind's past medical bills and records.

We agree this testimony does not support the $63,000 award. However, uncontradicted evidence does support allowing $70 per year for one examination by a physician, plus $450 for physical therapy, six sessions at $75 per hour; $40 for muscle relaxant which would reflect $20 each week for her two weeks of physical therapy. This would equal a total of $560, times her life expectancy of 54 years, which would total future medical expenses at $30,400. Applying a discount factor of 2.3 for adjustment to present value, her total allowable medical expenses are $17,374.13. The award of future medical expenses must therefore be reduced from $63,000 to $17,374.13.

3. Slowinskis contend the trial court improperly excluded testimony of their expert, Dr. Fielden, that Lind's position in Bunnell's lap contributed to and caused her injuries. The trial court excluded the testimony for lack of foundation and because it may have invited the jury to attribute negligence to Lind for failure to wear a seat belt in violation of Minn.Stat. § 169.685, subd. 4.

"[T]he admissibility of expert testimony rests within the sound discretion of the trial court, and its decision will not be reversed on appeal unless there is a showing of clear abuse of discretion." *Dunshee v. Douglas*, 255 N.W.2d 42, 47 (Minn.1977). In *Dunshee*, the supreme court upheld the trial court's exclusion of expert testimony in the nature of reconstruction of an accident where that expert would have testified based solely on photographs and blue prints. The testimony was kept out because the expert had not examined the plaintiff's vehicle, guardrail, or road surface, did not witness the accident or conduct any tests on the vehicle. *Id.* at 48.

Upon a thorough review of the record, we similarly find no abuse of discretion on the part of the trial court in this case. Among other foundational deficits, Dr. Fielden testified he had no training in accident reconstruction; did not know how many times the car rolled; viewed neither

the actual accident site, car, or photographs; did not know the height or weight of the vehicle. In short, he exhibited a complete lack of knowledge as to vehicle, site conditions, and accident dynamics. The proffered evidence was lacking in foundation and properly excluded.

■ Additionally, if the testimony were allowed, it would have put before the jury the fact that Lind was not wearing a seat belt. Minn.Stat. § 169.685, subd. 4 (1988) states:

Proof of the use or failure to use seat belts * * * shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

The specific intent of the legislature was to remove from jury consideration the use or nonuse of seat belts. The exclusion of this testimony accomplished that legislative intent.

## DECISION

The judgment assigning liability to Bunnell is reversed. Since the jury determined Lind's liability at 5%, and Slowinski was held negligent and liable as a matter of law, judgment shall be entered against Slowinski for all damages assigned to Bunnell. Except that the award of future medical damages shall be reduced from $63,000 to $17,374.13.

Affirmed in part and reversed in part.