*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0087**

Aaron Larson,
Respondent,

vs.

BNSF Railway Company,
Appellant.

**Filed December 12, 2016
Affirmed in part, reversed in part and remanded
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-14-2083

Thomas W. Fuller, Cortney S. LeNeave, Hunegs, LeNeave & Kvas, P.A., Wayzata, Minnesota; and

Eric J. Magnuson, Lisa Lodin Peralta, Robins Kaplan LLP, Minneapolis, Minnesota (for respondent)

Sam Hanson, Jonathan P. Schmidt, Tara Reese Duginske, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

Kimberly L. Johnson, Eugene C. Shermoen, Jr., Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HOOTEN**, Judge

Appellant employer challenges the district court's denial of its motion for a new trial or conditional remittitur, arguing that the jury's findings regarding respondent employee's damages for loss of future earnings and for future medical care and supplies were speculative and could not be sustained by the evidence presented at trial. Because the loss of future earnings award is supported by the evidence presented at trial, we affirm in part. But, because there was no reasonable basis for the future medical care and supplies award, we reverse in part and remand.

## FACTS

On March 16, 2013, respondent Aaron Larson was injured while working in the railyard of his employer, appellant BNSF Railway Company. Larson experienced serious back pain following his injury and required medical treatment, including surgery. Larson filed an action against BNSF, alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (2012), and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301–06 (2012). Following a July 2015 trial, a jury found that BNSF was negligent, BNSF violated the FSAA, and both BNSF's negligence and its violation of the FSAA played a part in causing Larson's injuries. The jury found that Larson suffered damages of $4,497,058.37, including $1,934,400 for loss of future earnings and $787,853.58 for future medical care and supplies. The district court awarded Larson damages in accordance with the jury's findings, but reduced the verdict by $41,426.79 to account for past medical expenses paid by BNSF. BNSF filed a motion for judgment as a

matter of law or, alternatively, for a new trial or for conditional remittitur, and the district court denied this motion. This appeal followed.

**D E C I S I O N**

On appeal, BNSF challenges only the district court's denial of its motion for a new trial or remittitur with regard to the jury's findings regarding Larson's damages for future medical care and loss of future earnings. "[T]he assessment of damages is the peculiar province of the jury." *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 794 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. Mar. 13, 2001). In a civil case, the plaintiff has the burden of proving the amount of future damages by a fair preponderance of the evidence and to a reasonable certainty. *Pietrzak v. Eggen*, 295 N.W.2d 504, 507 (Minn. 1980). Although proof to an absolute certainty is not required, future damages that are speculative or conjectural cannot be recovered. *Austin v. Rosecke*, 240 Minn. 321, 322, 61 N.W.2d 240, 242 (1953).

"[T]he question of whether a motion for a new trial on the ground of excessive damages should be granted or whether the verdict should be reduced rests in the practical judgment and sound discretion of the [district] court." *DeWitt v. Schuhbauer*, 287 Minn. 279, 286, 177 N.W.2d 790, 795 (1970). A motion for a new trial should be granted if "the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted" under a mistake or from an improper motive. *Lamb v. Jordan*, 333 N.W.2d 852, 855–56 (Minn. 1983) (quotation omitted). "Remittitur may be granted on the ground that an excessive verdict appears to have been given under the

3

influence of passion and prejudice or on the ground that the damages are not justified by the evidence." *Kwapien v. Starr*, 400 N.W.2d 179, 184 (Minn. App. 1987).

We review a district court's decision whether to grant a new trial for an abuse of discretion. *Boschee v. Duevel*, 530 N.W.2d 834, 841 (Minn. App. 1995), *review denied* (Minn. June 14, 1995). Likewise, granting or denying a motion for remittitur is within the discretion of the district court, and we will not reverse the district court's decision in the absence of a clear abuse of discretion. *Kwapien*, 400 N.W.2d at 184.

**Loss of Future Earnings**

The jury found that Larson suffered damage in the amount of $1,934,400 for loss of future earnings. In denying Larson's motion for a new trial or remittitur, the district court determined that the jury's finding was sustainable under the evidence presented at trial. BNSF argues that the loss of future earnings award was speculative and contrary to the evidence and that the district court abused its discretion by failing to vacate the award.

FELA provides that an employer is liable to pay damages for injury caused in part or in whole by the employer's negligence. 45 U.S.C. § 51; *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 507, 77 S. Ct. 443, 449 (1957). The parties do not dispute that an injured employee may recover damages under FELA for lack of earning capacity. *See, e.g.*, *Grunenthal v. Long Island R.R. Co.*, 393 U.S. 156, 158, 160–62, 89 S. Ct. 331, 333–35 (1968) (affirming district court's award of damages which included future wages, as well as likely increases in wage); *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir. 1989) (concluding that FELA plaintiff presented sufficient evidence to allow lost earning capacity claim to go to jury). In order to recover damages for loss of earning

4

capacity, the plaintiff "must establish by a fair preponderance of the evidence the extent to which such impairment will be reasonably certain to occur." *Berg v. Gunderson*, 275 Minn. 420, 429, 147 N.W.2d 695, 701 (1966). In a non-FELA context, this court has stated that "[i]mpairment of earning capacity is an item of general damages which does not require specific proof of actual earnings either before or after the injury," because the compensation awarded is for "loss of the *power* to earn in the future." *Sylvester v. Gleason*, 371 N.W.2d 573, 575 (Minn. App. 1985).

The jury heard conflicting evidence regarding Larson's earning potential before and after his injury. We conclude that the jury's finding of Larson's damages for loss of future earnings is within the bounds of the evidence presented at trial.

At trial, Larson called Jan Lowe, a vocational rehabilitation consultant, as a witness. Lowe prepared a vocational analysis for Larson, comparing the earnings he could have made prior to his injury with the earnings he could make in his likely future vocational opportunities. Lowe testified that, given Larson's post-injury restrictions and skills, he will be limited to low-paying entry level work, paying approximately $12 an hour, or $96 a day for a full-time job. Lowe testified that she learned that the average earning capacity of a BNSF switchman is $350 to $375 per day. In estimating the difference between Larson's earning capacity before and after his injury, Lowe assumed that Larson would work 260 days a year—five days a week and fifty-two weeks a year—and would receive paid vacation. Larson testified that if he had not been injured and had continued working for BNSF as a switchman, he probably would have retired around the age of 60.

5

Based on this testimony, the jury could have determined that Larson, who was 31 years old at the time of trial, would have earned $375 per day working as a switchman, but that, after his injury, he would only be able to earn $96 a day. If the jury assumed that Larson was capable of working five days a week and earning $375 per day as a switchman, it could have determined that he was capable of earning $97,500 a year, or a total of $2,827,500 if he continued to work until the age of 60. The jury could have determined that if Larson, after his injury, would earn $96 a day and work five days a week, he could earn $24,960 a year, or $723,840 if he continued working until the age of 60. Subtracting this amount from the total Larson could have earned as a switchman results in $2,103,660 in lost earning capacity.

Furthermore, we note that Larson's testimony that he would have "probably" retired at the age of 60 if he had kept working as a switchman for BNSF is equivocal and that the jury could have determined that Larson would retire at a later age. If the jury assumed that Larson would retire at the age of 67, was capable of earning of $375 a day before his injury and would work five days a week, it could have determined that Larson was capable of earning $3,510,000 prior to his injury. The jury could have determined that if Larson, after his injury, would earn $96 a day and work five days a week until the age of 67, he would earn a total of $898,560. Subtracting this amount from the total he could have earned as a switchman results in $2,611,440 in lost earning capacity.

Because the jury could have accepted the evidence described above, we conclude that the award of $1,934,400 for loss of future earnings is sustainable under the evidence.[1] Therefore, we conclude that the district court did not abuse its discretion by denying BNSF's motion for a new trial or remittitur regarding the loss of future earnings award.

**Future Medical Care and Supplies**

BNSF argues that the award of damages for Larson's future medical care and supplies was speculative and unsupported by the evidence and that the district court abused its discretion by failing to vacate the award. "[A] tort victim may recover future damages caused by the tortfeasor even though it may be difficult to determine the exact amount of those damages." *Ray v. Miller Meester Advert., Inc.*, 684 N.W.2d 404, 407 (Minn. 2004). To establish damages for future medical care, a plaintiff must (1) demonstrate that "future damages in the form of future medical treatments will be required" and (2) establish the amount of future medical expenses. *Lind v. Slowinski*, 450 N.W.2d 353, 358 (Minn. App. 1990), *review denied* (Minn. Feb. 21, 1990).

Dr. Jon Stephenson is a family physician who treated Larson. Dr. Stephenson testified at trial that Larson began to consider having surgery to treat his pain after initial attempts to treat his pain were unsuccessful. Larson underwent a discectomy in October

---

[1] We note that "[t]he [United States] Supreme Court has held that compensatory damage awards for loss of future earnings under FELA must be discounted to present value." *Melin v. Burlington N. R.R. Co.*, 401 N.W.2d 418, 419 (Minn. App. 1987). Here, Dr. Karl Egge, an economist called by Larson, testified that because the discount to present value was offset by the expected increase in wages, the jury could simply "take the number of future years times the current annual amount" to determine the present cash value of the future earnings award.

7

2014. Dr. Stephenson testified that Larson initially experienced relief after the surgery, but his pain eventually worsened. Dr. Stephenson opined that, to a reasonable degree of medical certainty, Larson is reasonably likely to require future care and treatment as a result of the injury he sustained while working for BNSF and that Larson will continue to have problems with his lower back for the rest of his life. Furthermore, Dr. Stephenson indicated that it was possible that a patient with injuries like Larson's would need to undergo multiple procedures.

Dr. Timothy Garvey, an orthopedic surgeon, testified that after Larson's injury, he performed a discectomy, but the surgery did not alleviate Larson's pain. Dr. Garvey opined that, as a result of his injury, Larson had suffered a permanent injury and is reasonably likely to suffer pain and incur future medical expenses. Dr. Garvey testified that although he gave Larson an injection after his discectomy to help alleviate his pain, Larson reported that his pain relief only lasted for two weeks. In Dr. Garvey's opinion, given that Larson's pain was only temporarily alleviated by the injection, there was a "good chance" that further surgical intervention would be necessary. Moreover, because Larson has had a discectomy and continues to have pain, Dr. Garvey testified that Larson is more likely to need fusion surgery as compared to someone who has not previously had a discectomy. Dr. Garvey stated that revision surgery would also be a reasonable option.

As the district court concluded, the testimony of both Dr. Stephenson and Dr. Garvey is sufficient to permit the jury to find that Larson would need medical treatment in the future. And, given the totality of Dr. Garvey's testimony, we conclude that the evidence was sufficient to permit the jury to find that Larson's future medical treatment would

8

include surgery. Therefore, we must determine whether Larson sufficiently established the amount of future medical expenses.

The parties stipulated at trial that Larson had incurred $41,426.79 in medical expenses from the date of injury to the date of trial. The district court instructed the jury that Larson at age 31 had a life expectancy of 46 more years. Relying upon *Kwapien*, 400 N.W.2d at 179, and *Lind*, 450 N.W.2d at 353, Larson argues that the expert testimony that he is likely to need medical treatment in the future, combined with the evidence of the cost of his treatments in the past and his life expectancy, is sufficient to sustain the jury's finding as to the cost of his future medical care and supplies.

But, *Kwapien* and *Lind* are distinguishable from the facts here. The plaintiff in *Kwapien* sustained injuries as a result of a car accident. 400 N.W.2d at 181. At trial, the plaintiff's orthopedic surgeon testified that the plaintiff's condition was permanent and she would have to undergo physical therapy or similar treatment for the rest of her life. *Id.* at 184. While the plaintiff presented no testimony estimating the plaintiff's future medical expenses, this court upheld the jury's finding as to the plaintiff's future damages, stating that "it was possible for the jury to take [the plaintiff's] life expectancy and factor it against the cost of her past physical therapy treatments to arrive at an approximate figure for future medical expenses." 400 N.W.2d at 184. In *Lind*, this court drew upon *Kwapien* to uphold the award of future medical expenses, but reduced the award so that the future expenses were based on past medical expenses incurred by the plaintiff. 450 N.W.2d at 358.

In determining that the jury's finding as to Larson's future medical expenses was reasonable, the district court reasoned that the jury was presented with evidence that Larson

9

incurred approximately $18,011 per year in medical expenses between the time of the accident and trial. In arriving at this figure, the district court apparently divided the $41,426.79 in stipulated past medical expenses by the approximately 2.3 years between the date of accident and the date of trial. The district court then concluded that the jury's finding of Larson's damages for future medical care and supplies was reasonable, as the jury's award of $787,853.58, when divided by Larson's life expectancy of 46 more years, amounts to an award of approximately $17,100 per year. The district court found that even if the jury's finding of damages was generous, the finding was sustainable under the evidence. In so deciding, the district court apparently determined that, because the per-year allocation of the jury's finding of future medical costs was less than the per-year past medical expenses Larson had incurred, the jury's finding of future medical expenses was reasonable. We disagree.

There is no reasonable basis for the jury's finding that Larson would incur future medical expenses in the amount of $787,853.58 because there is no evidence to support a conclusion that Larson's past medical expenses are representative of the medical expenses he will incur in the future. By projecting Larson's past medical expenses over his life expectancy, the jury's finding as to Larson's future medical damages necessarily presumes that Larson will require additional surgeries in the future at the same rate as in the 28 months before trial—that is, one surgery every 28 months. While both Dr. Stephenson and Dr. Garvey testified that Larson may need to undergo surgery in the future, neither doctor indicated that Larson would likely require roughly 20 surgeries throughout his life expectancy. Moreover, we cannot reduce the award of future medical expenses based on

10

records of the past medical expenses that Larson incurred, as this court did in *Lind*, because there is no evidence in the record regarding what portion of the $41,426.79 in past medical expenses is attributable to the discectomy.[2]

Because the past medical expenses relied upon by the jury are not representative of Larson's future medical expenses, this case is distinguishable from *Kwapien*, where this court concluded that the jury could use the costs of the plaintiff's past physical therapy to compute the costs of the plaintiff's future medical costs, further physical therapy. 400 N.W.2d at 184. Here, there is no evidence supporting a conclusion that Larson's past medical expenses are representative of the probable costs of his future treatments.

We conclude that the district court abused its discretion by not granting a new trial on damages or, in the alternative, by not granting remittitur. Therefore, we remand this issue to the district court. We leave it to the district court's discretion to fashion a conditional order of remittitur that gives Larson the option of accepting a total award of damages for his future medical expenses that is within the bounds of the evidence presented at trial or having a new trial solely on the issue of the amount of Larson's damages for future medical expenses.[3] *See Easton Farmers Elevator Co. v. Chromalloy Am. Corp.*, 310

---

[2] While the record contains the parties' stipulation regarding Larson's past medical expenses, it does not contain an itemized list of Larson's past medical expenses.

[3] We note that the Minnesota Supreme Court has indicated that remittitur must be conditional:

> In no case reported has this court upheld the unconditional imposition of additur or remittitur. The law in Minnesota remains as was stated in [an earlier case]: a new trial may be granted for excessive or inadequate damages and made conditional upon the party against whom the motion is directed

11

Minn. 568, 578, 246 N.W.2d 705, 712 (1976) (directing district court to order remittitur or new trial on damages if plaintiff did not agree to remittitur where evidence did not support one class of damages).

 **Affirmed in part, reversed in part, and remanded.**

---

   consenting to a reduction or an increase of the verdict.  Consent of the nonmoving party continues to be required.
*Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45, 50 (Minn. 1989).