# MARJORIE DORNBERG v. ST. PAUL CITY RAILWAY COMPANY.

## 91 N. W. (2d) 178.

### June 27, 1958—No. 37,212.

*Michael J. Welsh, Gordon Paterson,* and *Cary, Welsh & Roseen,* for appellant.

*W. S. Lycan, Jr.,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries resulting from a collision between plaintiff's car and defendant's passenger bus which occurred November 24, 1954, at the intersection of Selby Avenue and Dunlap Street in St. Paul. Plaintiff was awarded a verdict of $9,500. Defendant appeals from an order denying its subsequent motion for judgment notwithstanding the verdict or for a new trial.

Errors assigned all relate to the evidence. Defendant contends the trial court erred (1) in refusing to receive in evidence a paragraph in a complaint in a prior action wherein plaintiff sought recovery for injuries sustained in an automobile accident in 1951; (2) in refusing to give the jury a cautionary instruction as to testimony of a bus passenger relating to a settlement made with her by defendant; (3) in receiving the opinion of a medical expert as to plaintiff's need for further surgery; and (4) in allowing a medical expert to relate plaintiff's statements as to past pain and suffering made in the course of his examination of her and to base opinions thereon.

At the trial defendant offered in evidence a paragraph in a complaint in plaintiff's prior action wherein she alleged:

"* * * That because of said injuries [received in the 1951 accident] plaintiff suffered, and will for a long time in the future suffer, severe and excruciating pain; that plaintiff is totally disabled and incapacitated and that she is informed and verily believes that she will always be partially disabled and deformed and may necessarily have to undergo further bone surgery."

After objection thereto by plaintiff and in response to the court's inquiry as to its relevancy, defendant's counsel stated that the court was accurate in concluding that the matters in such allegation were substantially in accord with the medical testimony and that "there is some question to what degree it is impeaching." In sustaining the objection to the offer, the court stated that it was of the opinion that there was "no impeaching statement [in the allegation] contrary to what has been testified to by the plaintiff and her attending and examining physicians during the course of this trial * * *."

In the course of the trial defendant called Mrs. Eva DaBruzzi, a passenger in defendant's bus, who testified in direct examination that she had no interest in the bus company or its driver or any of the parties to the action and that she was present under subpoena just to tell the truth. Upon cross-examination by plaintiff's counsel she again testified that she had no interest in the bus company whatsoever and had had no dealings with them. She was then asked:

"Q.　And as a result of your shaking up the bus company paid you for your injuries, did they not?

"A.　Yes."

Counsel for defendant did not object to or move to strike this testimony, but the following colloquy then took place:

"Mr. Welsh [defendant's counsel]: * * * plaintiff's own insurance company contributed 50 per cent of all settlements * * * the only thing that can be done is for the Court * * * to let the jury know that as to payment by the bus company * * * that Miss Dornberg contributed to the settlement and that no significance whatsoever should be drawn * * * from the payment, they should assume that both parties made the same admission—

　　　\*　\*　\*　\*　\*

"Mr. Lycan: * * * There is nothing appearing that the insurance company of Miss Dornberg's automobile contributed to the settlement. Her flat statement * * * was that the bus company paid her. That is the statement in evidence, and certainly is proper impeachment under many Minnesota deciding cases.

　　　\*　\*　\*　\*　\*

"The Court: * * * You satisfy yourself between now, Mr. Lycan, and the end of the trial and the defendant rests as to whether or not, with the situation such as it exists, Miss Dornberg's carrier did contribute payment toward injuries to this witness, and if such be true as stated by Mr. Welsh.

* * * * *

"Mr. Welsh: Even then, my position is that it would not be admissible, * * *.

"Mr. Lycan: May the record show I am not introducing it to show liability, and the court may so instruct the jury. This is impeachment. She said she had no interest in the bus company and had no dealings with its representatives.

"The Court: Let's drop it here and you pursue that, and let the Court know.

"Mr. Lycan: All right."

No further evidence was submitted on this question and, at the close of the evidence, defendant's counsel requested the court to instruct the jury to disregard testimony of Mrs. DaBruzzi relating to whether she had been paid by the bus company for her injuries on the ground that plaintiff's insurance company had contributed 50 percent to the settlement, making it an admission as to her contributory negligence, if anything. The following proceedings then occurred:

"The Court [to plaintiff's counsel]: * * * Do you intend to comment on the fact that Mrs. DaBruzzi was paid by the bus company, as the record indicates?

"Mr. Lycan: Yes, your Honor.

* * * * *

"The Court: * * * I suppose if you do comment on it some comment should be made to the effect that there is some possibility of contribution, even though the record doesn't disclose it. * * *

* * * * *

"Mr. Lycan: The record is clear, your Honor.

"The Court: You will recall that the Court stopped the testimony. It might have developed; we don't know. Then when the objection was raised, of course, that stopped it. * * * because of what happened in

court, I request that you not comment on it, or, if so, some correction will have to be made and I don't know how far we will have to go to do it. * * *

* * * * *

"Mr. Lycan: * * * The Court indicated he does not want me to go into that and I will not * * *.

* * * * *

"The Court: I won't forbid you from doing it. I don't know by what means I would correct it if it happens. * * * I shut it off at the time hoping that the thing would be gone into either by plaintiff or defense counsel and some satisfaction shown the Court that there was or was not contribution. If there hadn't been contribution, you were right in the first instance, you could dwell at length, because every fairness was afforded the defense attorney but it hasn't been pursued. * * * If you comment and are successful and it's later disclosed that there was contribution by your plaintiff's carrier * * * then the Court feels there would be error in the case."

In his closing argument defendant's counsel stated:

"* * * There were two witnesses who were called here, Mrs. Sjostrand and Miss DaBruzzi, who were not interested in the outcome of the case. * * * I would like to challenge Mr. Lycan to tell you how you can disregard the positive, disinterested testimony of people with no interest in the outcome of this case and to tell you whether he thinks that Mrs. Sjostrand and Miss DaBruzzi would come in here and perjure themselves * * * or misstate their testimony to keep Miss Dornberg from getting something that she had coming from the Bus Company."

In his argument to the jury plaintiff's counsel stated:

"* * * Counsel challenges me to answer his question, did they [Mrs. DaBruzzi and Mrs. Sjostrand] have any interest in the case. Mrs. DaBruzzi said she had no dealings with anybody from the Bus Company but yet you heard her testimony here on the stand."

In its instructions the court made no reference to the testimony of Mrs. DaBruzzi. At the close of the arguments defendant's counsel had protested that plaintiff's counsel had disregarded the court's request that

he should not refer to the purported settlement by the bus company. In response thereto the court stated:

"* * * May the record show * * * that * * * counsel's request * * * of instructions would be well taken except * * * that in Mr. Welsh's final argument he challenged * * * Mr. Lycan to explain the testimony of Mrs. DaBruzzi and Mrs. Sjostrand * * * [in] that they had no interest in the case and had no connection with anyone, and so forth. Had he left the matter alone, as we had discussed prior to argument, I would make a correction to the jury. Under the circumstances, the form of a direct challenge to be left unanswered, I feel that Mr. Lycan's comments were not out of order. Therefore, let them stand without any comment to the jury."

On the issue of plaintiff's need for future surgery, Dr. Donald R. Lannin, plaintiff's attending physician, testified that he had examined plaintiff for the purpose of diagnosis and treatment on six different occasions, the first on November 28, 1954, and the last on October 25, 1956, shortly before the trial; that, in connection therewith, he had examined X-rays of her hip taken after the 1951 accident and subsequently taken after the 1954 accident, and that based upon such examinations he had formed the opinion that she would eventually have to have surgery in the form of a hip fusion; that there was a great deal more reason to recommend a fusion as a result of the last accident than there was after the first accident in 1951; that a sound body of medical opinion would recommend such a fusion as necessary; that the second accident had greatly aggravated the condition of the hip resulting from the first accident and had given rise to his opinion that thereafter a fusion would be necessary; and that the reasonable charge for such surgery would be about $500 and that 6 weeks' hospitalization normally would be required therefor, the reasonable value of which would be about $750. He further testified that, while no one could tell positively that a future fusion would definitely be necessary, it was his opinion that the additional injury definitely increased the possibility that a fusion might be necessary in the future.

Dr. Lannin's testimony was based in part on a written report which he had made at the time he first examined plaintiff for treatment on

November 28, 1954. Therein, he had noted statements narrated to him by plaintiff as to her condition prior to the second accident and her course of improvement after the first accident in which she had fractured the same hip for which he was called to treat her. He testified that, because the same hip was involved, to treat her properly it was necessary that he have a complete history as to the injuries sustained in the first accident. His report as to plaintiff's narrative thereof included the following statement which defendant asserts should not have been received or considered as a foundation for his opinion:

"* * * During the past two years the patient has been able to walk without a cane and support although she has limped after long periods of activity. She has been able to carry on her work as a school teacher and feels that up until recently the hip has been slowly improving. She * * * feels that until recently the range of motion has improved. During the past few months the patient has felt that flexion of the hip has become about 90 per cent of normal * * *."

The remainder of his notes as to this and subsequent examinations of plaintiff for treatment related to present complaints and to his course of treatment therefor.

■ We do not feel that the trial court erred in rejecting the paragraph of the complaint in plaintiff's prior action submitted as above set forth since it was entirely irrelevant in the proceedings and served no purpose either for impeachment or otherwise. The rule is well established that statements in a pleading which are in the nature of admissions are admissible for impeachment purposes where they tend to prove a fact in issue and contradict the testimony of a party relative thereto. Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744. Examination of the testimony of plaintiff and her physicians reveals nothing in the instant case which could reasonably be held to be in conflict with the allegations contained in the described paragraph of the prior complaint, and the trial court properly rejected it for this reason.

■ We find no material error in the procedure relating to the testimony of Mrs. DaBruzzi to the effect that defendant had settled her claims arising out of the accident. As indicated above she was a passenger on the bus. In her direct testimony defendant's counsel sought

to convey the impression that she was entirely disinterested in the outcome of the case. To convey the same impression in cross-examination, she denied that she had any dealings with defendant. Accordingly, it was proper that, for the purpose of impeachment and to show possible bias, plaintiff thereafter bring out that defendant had settled its claim with her. While this settlement could not be regarded as an admission of liability on the part of defendant, it might well affect the weight which a jury would accord the testimony of this witness, and particularly her claims to disinterest in the litigation. It is true that evidence as to a settlement made by an adverse witness with an opposing litigant is inadmissible solely to show an admission of liability, Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3, but this does not mean that it may not be admitted to serve other relevant purposes. Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40; Fieve v. Emmeck, 248 Minn. 122, 78 N. W. (2d) 343; Schiro v. Raymond, 237 Minn. 271, 54 N. W. (2d) 329. That one of such purposes would be to impeach a witness' statement that she was without interest in the litigation is clearly implied in the language of the above decisions, and is indicated by numerous rulings from other tribunals where the issue has been presented. As stated in Annotation, 161 A. L. R. 397:

"It is permissible to show by cross-examination that an adversary witness has compromised or settled a claim which he had against the party calling him as a witness, for the purpose of showing a fact from which an inference of interest or bias may be drawn, which would thus reflect upon the credibility of the witness and influence the weight to be given his evidence, provided it is made clear that the evidence is offered only for such purpose and no other."

See, also, Hayes v. Coleman, 338 Mich. 371, 61 N. W. (2d) 634; Zelayeta v. Pacific Greyhound Lines, 104 Cal. App. (2d) 716, 232 P. (2d) 572; Luis v. Cavin, 88 Cal. App. (2d) 107, 198 P. (2d) 563; Etheridge v. Gordon Const. Co. 62 Wash. 256, 113 P. 639; Miller v. I. P. Thomas & Son Co. 89 N. J. L. 364, 98 A. 193; Pfiffner v. Kroger Grocer & Baking Co. (Mo. App.) 140 S. W. (2d) 79. In submitting this evidence and in his argument to the jury, plaintiff's counsel clearly manifested that it was submitted solely to impeach the statement of the

witness that she was disinterested in the litigation. Such procedure was invited by counsel for defendant by virtue of his questions directed to show disinterest and by the challenge in his closing argument that plaintiff's counsel show otherwise. Under the circumstances, we find no error in the proceedings relative to this testimony.

■ On plaintiff's need of future surgery, the evidence appears adequate to support a finding based thereon. To entitle an injured claimant to damages for future disability or surgery, there must be reasonable medical certainty with reference thereto. Derrick v. St. Paul City Ry. Co. 252 Minn. 102, 89 N. W. (2d) 629; Gau v. J. Borgerding & Co. 175 Minn. 150, 220 N. W. 412. The testimony of Dr. Lannin clearly brings the instant litigation within this rule. His repeated examinations of plaintiff for purposes of treatment, including his examination of the X-rays of her injured hip, formed more than an adequate foundation for his opinion as to her need of future surgery. Based upon proper hypothetical questions he also expressed the opinion that the automobile accident of November 24, 1954, had aggravated plaintiff's previous hip injury and had caused him to definitely formulate the opinion that future surgery was necessary because thereof. The fact that he expressed the opinion that such surgery *might* be necessary, which of course indicates less than an absolute conviction on the subject, would go to the weight of his opinion but would not deprive the jury of the right to consider it. See, Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852. As stated in Hiber v. City of St. Paul, 219 Minn. 87, 93, 16 N. W. (2d) 878, 881:

"* * * It is not necessary that the truth of an expert's opinion be capable of demonstration; it is sufficient that it is probably true. 'He [an expert witness] is not required to speak with such confidence as to exclude all doubts in his mind, but may render his testimony in the form of an estimate of opinion, couched in expressions that fall short of absolute conviction of accuracy. Such qualification affects merely the probative force of the testimony.' 20 Am. Jur., Evidence, § 768. See, Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487."

■ Contentions of defendant with reference to the impropriety of

permitting plaintiff's physician to express an opinion based in part on plaintiff's narrative as to her past pain, suffering, and as to improvement after the first accident are governed by our recent decision in Peterson v. Richfield Plaza, Inc. 252 Minn. 215, 89 N. W. (2d) 712, where the same question was presented. Here, the only statements of plaintiff which related to past disabilities were made to her physician on November 28, 1954, for the purpose of treatment and indicated merely that during the past two years she had been able to walk without a cane, although she had limped after long periods of activity; that she had been able to carry on her work as a schoolteacher; that she felt that until recently her hip had been slowly improving; that its range of motion had improved; and that its flexion had become about 90 percent of normal. Her physician made thorough examinations of her on numerous other occasions and in connection therewith examined X-rays of her hip injuries sustained in both accidents. It is clear that the situation thus presented brings this case directly within the rule expressed in Peterson v. Richfield Plaza, Inc. *supra,* that it is not error to permit an attending physician to testify as to the history of an illness or injury related by his patient for the purpose of diagnosis or treatment whether such history relates to symptoms or conditions existing at the time of the consultation or to past symptoms or conditions as long as they relate to the injury or illness for which the patient seeks treatment and are relevant to the subject of the inquiry.

Affirmed.