**Lillian C. PIETRZAK, Appellant,**

v.

**Bennie Oscar EGGEN, defendant and third party plaintiff, Respondent,**

v.

**Joseph M. PIETRZAK, third party defendant, Respondent.**

No. 49538.

Supreme Court of Minnesota.

June 20, 1980.

Dickel, Johannson, Wall & Taylor and Kenneth F. Johannson, Crookston, for appellant.

Powell, Drahos & Baer and Romaine R. Powell, Bemidji, for Oscar Bennie Eggen.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger and Richard N. Jeffries, Moorhead, for Joseph M. Pietrzak.

Heard before PETERSON, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This appeal arose out of an action to recover damages for personal injuries sustained by plaintiff, Lillian C. Pietrzak, as a result of an automobile accident which occurred on May 4, 1974. That evening, plaintiff's husband, Joseph M. Pietrzak, drove in an easterly direction along State Highway 1 and approached the intersection

with Main Street in Oslo, Minnesota. Plaintiff sat in the front passenger seat. Defendant Bennie Eggen approached the same intersection as he drove in a southerly direction along Main Street. The evidence at trial showed that defendant failed to stop his automobile at the stop sign at the intersection of Highway 1 and Main Street. There was also evidence from which the jury could conclude that plaintiff's husband exceeded the speed limit as he approached the intersection. The two vehicles collided at the intersection. Plaintiff was thrown against and under the dashboard. Her injuries were diagnosed initially as multiple bruises, fracture of the nasal bones, abrasions to the left knee and pain in both knees.

Plaintiff initiated this action and alleged that her injuries were sustained as a result of defendant's negligence. Defendant impleaded plaintiff's husband as a third party defendant and alleged that plaintiff's injuries were a result of her husband's negligent operation of the car in which she was a passenger. At the close of all the evidence, the trial court refused to instruct the jury on future medical expenses as items of special damages on the ground that plaintiff failed to establish to a reasonable certainty that they were likely to be incurred. The court, however, did instruct the jury on future pain and suffering and future diminished earning capacity.

The jury returned a special verdict finding defendant 70% negligent and the third party defendant 30% negligent and awarded damages of $5,000 to plaintiff. Plaintiff moved for additur or in the alternative a new trial. The district court granted the motion for additur and increased the jury award from $5,000 to $10,000. Both defendants consented to the additur and do not attack the additur in this appeal. Instead, plaintiff regards the award as still inadequate and appeals pursuant to Minn.R. Civ.P. 59.01(5). Plaintiff argues that the

trial court erred when it refused to instruct the jury on future surgery and its attendant expenses because she established that these future damages were likely to occur to a reasonable certainty. She asks for a new trial on the issue of damages only.[1] We agree and reverse and remand for a new trial on the issue of special as well as general damages.

The evidence at trial established that Dr. Wilfred Pinsonneault, M.D. treated plaintiff in the emergency room at Warren Hospital in Warren, Minnesota. He admitted plaintiff to the hospital where she remained until May 11, 1974. He diagnosed her injuries as multiple bruises, a fracture of the nasal bones, abrasions to the left knee and pain in both knees. He testified that the accident caused the injuries. After her discharge from the hospital, she continued to complain to him about pain in her knees. In December 1975, he referred her to Dr. B. J. Clayburgh, M.D., an orthopedic surgeon.

Dr. Clayburgh testified he initially examined plaintiff in December 1975. His physical examination revealed tenderness of the knees particularly about the anteromedial joint line and a moderate amount of patellofemoral chondromalacia, a degenerative wearing process involving the cartilage between the knee cap and thigh bone. X-rays of her knees revealed a narrowing on the medial side of the knees signifying a narrowing of the joint space between the femur and the tibia on the inner side of her knees. Because the cartilage in that area suffered a trauma, it was wearing out. This process can eventually lead to bone grinding on bone. Dr. Clayburgh testified that he diagnosed plaintiff as suffering from degenerative joint disease. Dr. Clayburgh opined that these clinical findings were a result of the trauma of the automobile accident. He further testified that when he examined her 18 months later, this condition had progressed. He stated that

---

1. Plaintiff's argument that defendant's counsel's closing argument contained statements so prejudicial and inflammatory that a new trial is required is without merit. We have reviewed the record and conclude that while some of these remarks may have crossed the bounds of propriety, they are not so prejudicial that the trial court abused its discretion in denying a new trial on this ground. *Bisbee v. Ruppert*, 306 Minn. 39, 235 N.W.2d 364 (1975).

plaintiff had an 18% permanent partial disability to the whole person based on the injury to both knees suffered in the accident, that he expected her condition to become progressively worse and that she would experience more and more pain as it progressed. In addition, he testified that plaintiff's occupation as a seasonal manual laborer would aggravate even further the progressive nature of her condition. Dr. Clayburgh then described knee reconstruction surgery in which the lower end of the femur and upper end of the tibia are replaced with prosthetic devices. He stated that this surgery is not recommended for a patient merely because there is a narrowing along the medial side of the joint. Instead, it is recommended when the patient cannot, because of the pain, perform the normal functions of living and doing the things he or she wishes to do. He testified that, in his opinion, over 50% of a group of 100 individuals with x-rays identical to those of plaintiff would eventually undergo knee reconstructive surgery. He then stated:

> This woman is a young woman. She's now 57. So she has a lot of years to use these poor knees.
>
> I would expect that they are going to progress and I would expect that they are going to give her enough trouble that if she knew that she could get relief, she would probably seek such relief.

After extensive testimony on the costs of knee reconstructive surgery and all the attendant costs of hospitalization and physical therapy, he stated that after successful knee reconstructive surgery, her disability would decrease to approximately 5 to 10 percent and that the pain in her knees would also decrease substantially. On cross-examination, he testified that plaintiff's excessive weight aggravated her condition and that he did not recommend knee reconstructive surgery for her at the time of trial.

■ In a civil action the plaintiff has the burden of proving future damages to a reasonable certainty. This rule insures that there is no recovery for damages which are remote, speculative, or conjectural. How-

ever, it is not necessary that the evidence be unequivocal or that it establish future damages to an absolute certainty. Instead, the plaintiff must prove the reasonable certainty of future damages by a fair preponderance of the evidence. In short, the plaintiff is entitled to an instruction on future damages if he or she has shown that such damage is more likely to occur than not to occur. *Duchene v. Wolstan*, 258 N.W.2d 601 (Minn.1977); *Carpenter v. Nelson*, 257 Minn. 424, 101 N.W.2d 918 (1960); *Dornberg v. St. Paul City Railway*, 253 Minn. 52, 91 N.W.2d 178 (1958).

In *Dornberg v. St. Paul City Railway, supra*, 253 Minn. 52, 91 N.W.2d 178, an expert testified that the plaintiff "would eventually have to have surgery in the form of a hip fusion" and that "while no one could tell positively that a future fusion would definitely be necessary it was his opinion that the additional injury definitely increased the possibility that a fusion might be necessary in the future." *Id.* at 57, 91 N.W.2d at 183. We held that even though he used the word "might" in connection with the necessity for surgery, the trial court properly submitted the question of future surgery as an item of special damages. We held that the need for future surgery was established to a reasonable medical certainty and the trial court properly submitted this issue to the jury in *Hake v. Soo Line Railway Co.*, 258 N.W.2d 576 (Minn.1977). In that case, a physician testified that the chances were that the plaintiff would have to have further surgery on his reconstructed knee during his lifetime.

■ We conclude that the trial court erred when it refused to instruct the jury on future knee reconstructive surgery and its attendant expenses. Plaintiff established that the necessity for knee reconstructive surgery during her lifetime was more likely than not. It was not necessary for her to show the need for this operation to an absolute certainty. The nature of the injury to her knees and the nature of knee reconstructive surgery itself makes a showing of absolute certainty inherently impossible. The issue should have been submitted

to the jury. The jury then should have decided what weight to give the expert's opinion on the issue of future surgery.

We are mindful of the rule that the decision to grant a new trial on the ground of inadequate damages is committed to the sound discretion of the trial court. *Tuominen v. Waldholm*, 301 Minn. 492, 221 N.W.2d 709 (1974). We would not be inclined to reverse and remand this case for a new trial on the issue of special as well as general damages but for the fact that future pain and suffering as well as future diminished earning capacity are so inextricably tied to future surgery and its attendant expenses. The jury assessed plaintiff's damages in a lump sum rather than allocating amounts to each item of damage. The trial court granted additur in a lump sum. In light of the trial court's failure to instruct on future surgery, we reverse and remand this case for a new trial on the damages issue only.

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.