**Dr. Marjorie McMILLAN**

v.

**MASSACHUSETTS SOCIETY FOR the PREVENTION OF CRUELTY TO ANIMALS; Dr. Gus Thornton; and Dr. Paul Gambardella.**

Civil Action No. 92–11178–RGS.

United States District Court,
D. Massachusetts.

Oct. 27, 1995.

---

Dahlia C. Rudavsky, Shilepsky Messing & Rudavsky, Boston, MA, for Plaintiff.

Marcus Cohn and Mellissa Tearney, Hill & Barlow, Boston, MA, for Defendants.

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED COUNTERCLAIM; PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM AND ORDER ALLOWING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON TITLE VII CLAIM; AND PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S DECISION ON DAMAGES CAP*

STEARNS, District Judge.

### BACKGROUND

This is an employment discrimination case in which the plaintiff, Dr. Marjorie McMillan, seeks compensation under the Federal Equal Pay Act (29 U.S.C. § 206(d)) and M.G.L. c. 151B for the termination of her employment as the head of the radiology department at Angell Memorial Veterinary Hospital. The defendants in this case, the Massachusetts Society for the Prevention of Cruelty to Animals (MSPCA), and two hospital administrators, Dr. Gus Thornton, and Dr. Paul Gambardella, have filed a counterclaim in which they allege that McMillan defamed them in a series of letters and articles that she sent to patrons of Angell and to members of the veterinary community. On March 17, 1995, the court issued a Memorandum and Order on Defendants' Motion for Summary Judgment dismissing several of McMillan's claims (including a Title VII employment discrimination claim) and ruling that, since plaintiff's c. 151B discrimination claim sounded in tort, the MSPCA's liability was limited to $20,000 by M.G.L. c. 231, § 85K, the charitable immunity statute. See *McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals*, 880 F.Supp. 900 (D.Mass.1995). Before the court is McMillan's motion asking the court to reconsider the dismissal of her Title VII claim and its ruling that the charitable immunity statute applies to her c. 151B claim. Also before the court is a motion by the defendants for leave to file an amended counterclaim, and a motion by McMillan for summary judgment on defendants' original counterclaim.

### DISCUSSION

1. *McMillan's Motion for Reconsideration of the Court's Dismissal of Her Title VII Claim*

McMillan's principal argument in support of her motion for reconsideration of the dismissal of her Title VII claim is that contrary to the court's burden shifting analysis, the statistical evidence offered by her expert witness, taken together with disparaging remarks by Angell employees testified to by McMillan and a co-worker, provides the "plus" of the First Circuit's "pretext-plus" requirement. McMillan cites to a recent First Circuit case. *Woodman v. Haemonet-*

*ics Corp.,* 51 F.3d 1087 (1st Cir.1995). In *Woodman,* the Court (per Judge Cyr), held:

> Where the elements of a sufficient prima facie case combine with the factfinder's belief that the ostensible basis for dismissing the employee was pretextual, 'particularly if [that confluence is] . . . accompanied by a suspicion of mendacity,' the factfinder is permitted to infer the intentional age-based discrimination required to enable the plaintiff-employee to prevail on the merits. *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2749.[1]

*Woodman,* 51 F.3d at 1092. Taken out of its factual context, this language in *Woodman* appears to bolster McMillan's argument. However, in *Woodman,* the Court reversed the district court's grant of summary judgment not because it misapplied Title VII burden shifting, but because it had improperly ruled that a vicarious admission of discrimination by the defendant was inadmissible. *Woodman,* 51 F.3d at 1093. ("[T]he putative vicarious admission by [the defendant] . . . is crucial to our *de novo* determination whether [the defendant] was entitled to summary judgment as a matter of law.") *Woodman* is therefore inapposite, as McMillan has presented no evidence that amounts to anything as damning as an admission of intentional discrimination by her employer. For the reasons stated in the March 17, 1995 Memorandum and Order, the statistical evidence presented by McMillan's expert, even when considered in conjunction with the tasteless comments recounted in the summary judgment record and viewed in the light most favorable to the plaintiff, is not sufficient under First Circuit precedent to permit a reasonable jury to find for the plaintiff on her Title VII claim.

The motion for reconsideration of the Court's Memorandum and Order Allowing Defendants' Motion for Summary Judgment on the Title VII claim [Docket # 112] will be *DENIED* without prejudice to the plaintiff's seeking further consideration of the issue after the presentation of her evidence at trial.

## 2. *McMillan's Motion for Reconsideration of the Court's Ruling that the Charitable Immunity Statute Applies to This Case*

■ In the March 17, 1995 Memorandum and Order, the court ruled that M.G.L. c. 231, § 85K, the charitable immunity statute, applies to McMillan's c. 151B claim. In so ruling, the court noted that "the parties have proceeded on the assumption that the 151B claims in fact sound in tort," and explained that since section 85K works not to *abolish* the common law rule of total charitable immunity but instead to *permit* damage awards of up to $20,000 in spite of the doctrine, to hold section 85K inapplicable to McMillan's case would bar her from recovery entirely. See *McMillan v. MSPCA,* 880 F.Supp. at 911, n. 8. At the time of that ruling, there were no opinions published by the Massachusetts Court of Appeals or the Supreme Judicial Court addressing the issue. This has since changed.

On May 5, 1995, the Massachusetts Appeals Court decided *Kuppens v. Davies,* 38 Mass.App.Ct. 498, 649 N.E.2d 164 (1995), in which it drew a distinction between future damages awarded in tort and c. 151B discrimination cases. The *Kuppens* Court was confronted with the issue whether an award for lost earning capacity in a tort case was subject to prejudgment interest. Arguing by analogy, the defendant in *Kuppens* reasoned that since front pay damages awarded pursuant to c. 151B are not subject to prejudgment interest, an award of lost future earnings should not be subject to prejudgment interest merely because the action is given a "tort" label. The Appeals Court disagreed, explaining that the defendant's premise, that damages for lost future earnings recoverable in tort and c. 151B actions are identical, was incorrect.

> The distinction is a fine one, but it is serviceable: that in tort cases for personal injuries or property damage, compensation for future lost wages will be treated conceptually as an already incurred loss of earning capacity; while, in discrimination

---

1. The full citation is *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

cases under G.L. c. 151B, expected future income reductions will be treated conceptually as losses not yet incurred (i.e., "front pay damages").

*Kuppens,* 38 Mass.App.Ct. at 500, 649 N.E.2d 164. Because the characterization of a damage award as either "front pay damages" or "future lost wages" is, in and of itself, a distinction without a difference, it is logically inferable from *Kuppens* that it is the nature of the cause of action, rather than the nature of the damage award, that distinguishes tort damages from c. 151B damages for purposes of calculating prejudgment interest.[2] Implicit in the *Kuppens* holding is the Court's recognition that whatever it is, a c. 151B claim is not a claim in tort. While the issue is a close one, for the reasons stated at oral argument, I rule that consistent with the logic of *Kuppens,* damages awarded pursuant to M.G.L. c. 151B are not deemed under Massachusetts law to be tort damages and are thus not subject to the $20,000 limitation imposed by M.G.L. c. 231, § 85K.

· The plaintiff's motion for reconsideration of the Court's Memorandum and Order ruling that the charitable immunity statute limiting tort damages to $20,000 applies to this case [Docket # 126] will therefore be *ALLOWED.*

3. *Defendants' Motion to Amend the Counterclaim.*

■■■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." This phrase is usually interpreted as an affirmation of the liberal approach to pleading taken by the modern rules, see, e.g., *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), and as an encouragement to district judges to decide a plaintiff's claims on the merits whenever possible. See *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). I see no reason why these principles should not be applied to "counterclaims" in precisely the same way that they are to "claims" asserted by way of a complaint.[3]

■ In this case, the defendants do not seek to add any new claims, but instead to "further particularize ... the defamatory statements previously complained of" and to add two additional instances of alleged defamation as grounds for recovery on their single count of libel/slander. Defendants' Motion for Leave to File Amended Counterclaim, at 2. The defendants also seek to amend their counterclaim by attaching additional letters sent to them by recipients of the allegedly defamatory statements.

McMillan argues that because the defendants' amendments are untimely and futile, leave to amend should be denied. Specifically, McMillan points out that the defendants filed their original counterclaim in July of 1992, that discovery closed in this case on March 31, 1993, that she filed a motion for

2. *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), cited by defendants, is not to the contrary. In *Burke,* the Supreme Court was confronted with the question whether Title VII discrimination damages should be treated, for tax purposes, as a contract or a tort award. Noting that "one of the hallmarks of traditional tort liability is the availability of a broad range of damages," id. at 235, 112 S.Ct. at 1871, the *Burke* Court ruled that since (pre–1991) Title VII damages were generally limited to back pay and injunctive relief, that the Title VII claim itself was more appropriately analogized to a contract claim than a tort when analyzed under 26 U.S.C. § 104(a)(2) of the Internal Revenue Code. Defendants argue that since c. 151B permits broader remedies than does its federal counterpart, claims brought under the statute should be considered to sound in tort. Defendants' Opposition Memorandum, at 7. But the *Burke* Court's inquiry was limited to whether a Title VII action was "based upon tort or *tort type* rights," *Burke,* at 234, 112 S.Ct. at 1870 (emphasis added), for federal income tax purposes. It was not engaged in a metaphysical examination of whether gender discrimination claims are in essence, torts. See also *C.I.R. v. Schleier,* —— U.S. —— ——, 115 S.Ct. 2159, 2167, 132 L.Ed.2d 294 (1995) (damage awards under ADEA are not sufficiently "tort like" to be considered excludable from gross income under 26 U.S.C. § 104(a)(2)). In any event, federalism concerns require that I defer to the decision of the courts of the Commonwealth of Massachusetts rather than analogous federal common law when interpreting a Massachusetts statute.

3. Rule 15(a) refers to "pleadings," rather than "claims," and this phrase is clearly intended to encompass counterclaims.

summary judgment on the counterclaim on February 2, 1995, and that the defendants did not file their motion to amend the counterclaim until March 6, 1995. Furthermore, she argues that the additional statements recited in the amended counterclaim are, like those in the original counterclaim, protected opinions not actionable under a defamation theory, thus rendering the motion to amend futile. She also contends that allowing the motion to amend the counterclaim would cause her prejudice, and cites *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230, in support of her request that the court deny the motion:

> In the absence of any apparent or declared reason—such as *undue delay*, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment,* etc.—the leave sought should, as the rules require, be freely given. [Emphasis added].

The unexplained delay of approximately two years in filing the amendment, the fact that the amendment was filed more than one month after McMillan filed her motion for summary judgment on the original counterclaim, and the fact that the newly added statements are closely akin to those originally included in the counterclaim militate in favor of denying the motion to amend. See *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.,* 884 F.2d 1510, 1517–1518 (1st Cir.1989) (two year unexplained delay was "undue" within the meaning of Rule 15(a)); *Debreceni v. Bru–Jell Leasing Corp.* 710 F.Supp. 15, 18 (D.Mass.1989) (denying motion to amend filed after motion for summary judgment); *Finnern v. Sunday River Skiway Corp.,* 984 F.2d 530, 536 (1st Cir.1993) (amendment is "futile" within the meaning of Rule 15(a) when merely adding "facts and arguments already set forth by the [previously filed] pleadings."). However, the defendants do not seek to add any new theories or causes of action by way of their amendment, and the fact that the counterclaim, as amended, adds very little, if anything, to their underlying claim of defamation suggests that McMillan will not suffer any prejudice if the amendment is allowed. Indeed, McMillan need not even provide further briefing to the court, as the extensive materials she has already submitted apply with the same force to the two newly added statements as they do to the alleged defamatory remarks recited in the original counterclaim.[4]

In light of the tenacious manner in which both sides have attempted to cling to every possible legal theory in this case, and in consideration of the fact that on May 22 and July 18, 1995, the court allowed McMillan's motion for leave to file additional submissions in support of her motion for summary judgment on the counterclaims (either as is, or as amended) [Docket # 139 and # 143], the defendants' motion to file an amended counterclaim [Docket # 104] will be *ALLOWED.*

## *ORDER*

The motion for reconsideration of the Court's Memorandum and Order Allowing Defendant's Motion for Summary Judgment on the Title VII claim [Docket # 112] is *DENIED* without prejudice.

The plaintiff's motion for reconsideration of the Court's ruling that the dollar limitation of the charitable immunity statute applies to this case [Docket # 126] is *ALLOWED.* The court *ADJUDGES* and *DECLARES* that the defendant MSPCA's liability for damages under M.G.L. c. 151B is limited by neither M.G.L. c. 231, § 85K nor the common law doctrine of charitable immunity.

The defendants' motion to file an amended counterclaim [Docket # 104] is *ALLOWED.* McMillan's motion for summary judgment on the counterclaim will be treated as a motion for summary judgment on the amended counterclaim, and will be addressed in a separate Memorandum and Order.

SO ORDERED.

---

**4.** Moreover, the fourteen pages in McMillan's opposition memorandum devoted to arguing that the amendment would be futile also address the issue whether the newly added statements would survive a motion for summary judgment.